Nos. 19-35802 x 19-35822

---

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

GLORIA MITCHELL,

Cross-Appellant/Appellee,

v.

WINCO FOODS, LLC,

Appellee/Cross-Appellant.

On Appeal from the United States District Court
For the District of Idaho,
Case No. 1:16-cv-00076-BLW
The Honorable B. Lynn Winmill, United States District Judge.

---

FIRST BRIEF ON CROSS-APPEAL FOR
CROSS-APPELLANT/APPELLEE GLORIA MITCHELL

---

Eric B. Swartz
(eric@jonesandswartzlaw.com)
JONES & SWARTZ PLLC
623 W Hays Street
Boise, Idaho 83702
Telephone: (208) 489-8989

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)
WOODROW & PELUSO, LLC
3900 East Mexico Avenue
Ste. 300
Denver, Colorado 80210

*Attorneys for Cross-Appellant / Appellee Gloria Mitchell*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................iv

INTRODUCTION....................................................................... 1

JURISDICTIONAL STATEMENT ......................................... 3

STATEMENT OF PERTINENT STATUTORY PROVISIONS .............. 4

ISSUE PRESENTED FOR REVIEW ...................................... 8

STATEMENT OF THE CASE ................................................. 9

SUMMARY OF THE ARGUMENT ....................................... 13

ARGUMENT ......................................................................... 14

I.    THE DISTRICT COURT ERRED IN CONCLUDING THAT WINCO DID NOT WILLFULLY VIOLATE THE FCRA AS A MATTER OF LAW. ........................................................ 14

    A.    Standard Of Review ................................................ 15

    B.    WinCo Violated The FCRA's Stand-Alone Disclosure Requirement By Combining Its Consumer Report Disclosure With The Disclosure Required For Investigative Consumer Reports. .............................................................. 16

    C.    WinCo's Violation Was Willful: The Plain Language Of The FCRA's Stand-Alone Disclosure Requirement Is Unambiguous And Thus Not Open To A Range Of Interpretations. ................................................... 23

    D.    To The Extent That The FTC's Interpretations Of The Stand-Alone Disclosure Requirement May Be Persuasive, The *Willner* Opinion Explicitly Counseled Against Combining The Disclosures ................................................. 29

i

E.    The Lower Court's Conclusion That The Combination Of Information In WinCo's Disclosure Form Was Authorized By *Syed* And *Gilberg*, Either Directly Or By Implication, Was Also Made In Error ............................................................. 36

CONCLUSION ........................................................................... 42

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
 467 U.S. 837 (1984) ................................................................ 32–33

*Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-cv-02588-JCS,
 2015 WL 5782352 (N.D. Cal. Oct. 5, 2015) .................................... 38

*Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010) ............... 25, 29

*Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083 (9th Cir. 1998) ........... 16

*Gilberg v. Cal. Check Cashing Stores, LLC*,
 913 F.3d 1169 (9th Cir. 2019) ............................... 17–18, 26, 29, 40

*Gregg v. Hawaii, Dept. of Pub. Safety*, 870 F.3d 883 (9th Cir. 2017) ..... 16

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ....................................... 16

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) .......................... 23–24

*Swanson v. Southern Oregon Credit Serv., Inc.*,
 869 F.2d 1222 (9th Cir. 1988) ....................................................... 33

*Syed v. M-I, LLC*, 853. F.3d 492 (9th Cir. 2017) ........................... *passim*

*Walker v. Fred Meyer, Inc.*, No. 3:17-CV-01791-YY,
 2018 WL 3090199 (D. Or. June 21, 2018) ................................. 37–39

*Wilson v. Lynch*, 835 F.3d 1083 (9th Cir. 2016) .................................... 16

## STATUTES, RULES, AND OTHER SOURCES

Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq.* .......................... *passim*

28 U.S.C. § 1291 ..................................................................................... 3–4

28 U.S.C. § 1331 ............................................................................ 3

Fed. R. App. P. 3 ........................................................................... 4

Fed. R. App. P. 4 ........................................................................... 4

*FTC Advisory Opinion to Steer*,
    1997 WL 33791227 (Oct. 21, 1997) ......................................... 33–34

*FTC Advisory Opinion to Willner*,
    1999 WL 33932153 (Mar. 25, 1999) ................................... 30–35, 39

FTC Staff Report, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT
    REPORTING ACT (July 2011),
    www.ftc.gov/sites/default/files/documents/reports/40-years-
    experience-fair-credit-reporting-act-ftc-staff-report-summary-
    interpretations/110720fcrareport.pdf
    (last visited Dec. 11, 2019) ................................................ 20, 27, 35

## INTRODUCTION

Cross-Appellant/Appellee Gloria Mitchell respectfully appeals from the judgments of the District Court partially granting Appellee/Cross-Appellant WinCo Foods, LLC's motion to dismiss, and ultimately dismissing Mitchell's case against WinCo, after concluding that WinCo did not willfully violate the Fair Credit Reporting Act.

In April 2015, Mitchell applied to work at WinCo's store in Lewisville, Texas. As part of the application process, she was presented with and asked to sign a number of forms, including the consumer report disclosure at issue. Shortly after applying, Mitchell was hired to work as a deli clerk. She worked in this position for several months.

Mitchell thereafter filed suit against WinCo on behalf of herself and an alleged class composed of all others similarly situated, alleging violation of the Fair Credit Reporting Act ("FCRA"). Mitchell contends that WinCo's consumer credit report disclosure form contained extraneous information that violated the stand-alone disclosure requirement of 15 U.S.C. § 1681b(b)(2)(A).[1]

---

[1] Mitchell initially brought a second claim for violation of 15 U.S.C. § 1681b(b)(3)(A)'s pre-adverse action requirements, but that claim was dropped.

This is the second time this case is on appeal; this Court previously found that the District Court erred in dismissing the Complaint without leave to amend. Following an amendment on remand, WinCo again moved to dismiss, arguing that it had not violated the FCRA, willfully or otherwise. The District Court heard oral argument and subsequently granted in part and denied in part WinCo's motion. The District Court found that WinCo had indeed violated the FCRA's stand-alone disclosure requirement but that its violations were not reckless or otherwise willful to support statutory damages. Because Mitchell's claims seek statutory damages for WinCo's willful violations, Mitchell attempted to certify the order for immediate appeal. The District Court denied her motion, instead granting WinCo's motion for judgment on the pleadings and dismissing the entire action.

Mitchell appeals this judgment and the orders dismissing her case. The District Court erred in concluding that WinCo's violation was not willful. As the District Court recognized when correctly finding that WinCo's disclosure form violated the FCRA's stand-alone requirement, the language of the statute is unambiguous: the word "solely" means "solely." As a result, the provision is not open to interpretation, and

2

WinCo's inclusion of extraneous information was at least reckless—and therefore willful.

Further, the District Court erred in its interpretation of various authorities as favorable to WinCo. To the extent that WinCo and the District Court may properly rely on the FTC's advisory letters interpreting an unambiguous statute, the *Willner* opinion does not support WinCo's muddled form but, in fact, counsels against it. Likewise, the District Court incorrectly reasoned that the lack of direct analysis on this issue in *Syed* and *Gilberg* functions as an express or implied authorization of WinCo's combination. The inclusion at hand was simply not raised, and accordingly not considered, in *Syed* or *Gilberg*.

In light of these errors, the District Court's orders partially granting WinCo's motion to dismiss and thereafter dismissing the case should be reversed, and the case should be remanded so that it may advance beyond the pleadings and on to discovery.

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Idaho had subject matter jurisdiction under 28 U.S.C. § 1331 because this action arose under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*,

which is a federal statute. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the present appeal is from a final decision, disposing all of the parties' claims, made by the United States District Court for the District of Idaho. The District Court entered judgment dismissing the case in its entirety on August 21, 2019. (ER05.) Mitchell filed a notice of appeal on September 18, 2019. (ER01.) The appeal is timely pursuant to Fed. R. App. P. 3 and 4(a)(1)(A) because it was filed within thirty (30) days of the District Court's order and entry of final judgment.

## STATEMENT OF PERTINENT STATUTORY PROVISIONS

### Fair Credit Reporting Act

**15 U.S.C. § 1681a(d)(1)**

(d) Consumer report

(1) In general

The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title.

(2) Exclusions

Except as provided in paragraph (3), the term "consumer report" does not include--

(A) subject to section 1681s-3 of this title, any--

(i) report containing information solely as to transactions or experiences between the consumer and the person making the report;

(ii) communication of that information among persons related by common ownership or affiliated by corporate control; or

(iii) communication of other information among persons related by common ownership or affiliated by corporate control, if it is clearly and conspicuously disclosed to the consumer that the information may be communicated among such persons and the consumer is given the opportunity, before the time that the information is initially communicated, to direct that such information not be communicated among such persons;

(B) any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device;

(C) any report in which a person who has been requested by a third party to make a specific extension of credit directly or indirectly to a consumer conveys his or her

decision with respect to such request, if the third party advises the consumer of the name and address of the person to whom the request was made, and such person makes the disclosures to the consumer required under section 1681m of this title; or

(D) a communication described in subsection (o) or (x).

(3) Restriction on sharing of medical information

Except for information or any communication of information disclosed as provided in section 1681b(g)(3) of this title, the exclusions in paragraph (2) shall not apply with respect to information disclosed to any person related by common ownership or affiliated by corporate control, if the information is--

(A) medical information;

(B) an individualized list or description based on the payment transactions of the consumer for medical products or services; or

(C) an aggregate list of identified consumers based on payment transactions for medical products or services.

## 15 U.S.C. § 1681a(e)

(e) The term "investigative consumer report" means a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information. However, such information shall not include specific factual information on a consumer's credit record obtained directly from a creditor of the consumer or from a consumer reporting agency when such

information was obtained directly from a creditor of the consumer or from the consumer.

## 15 U.S.C. § 1681b(b)(2)

(2) Disclosure to consumer

(A) In general

Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

## 15 U.S.C. § 1681d(a)

(a) Disclosure of fact of preparation

A person may not procure or cause to be prepared an investigative consumer report on any consumer unless--

(1) it is clearly and accurately disclosed to the consumer that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made, and such disclosure (A) is made in a writing mailed, or otherwise delivered, to the consumer, not later than three

days after the date on which the report was first requested, and (B) includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section and the written summary of the rights of the consumer prepared pursuant to section 1681g(c) of this title; and

(2) the person certifies or **has** certified to the consumer reporting agency that--

    (A) the person has made the disclosures to the consumer required by paragraph (1); and

    (B) the person will comply with subsection (b).

## 15 U.S.C. § 1681d(b)

(b) Disclosure on request of nature and scope of investigation

Any person who procures or causes to be procured an investigative consumer report on any consumer shall, upon written request made by the consumer within a reasonable period of time after the receipt by him of the disclosure required by subsection (a)(1), make a complete and accurate disclosure of the nature and scope of the investigation requested. This disclosure shall be made in a writing mailed, or otherwise delivered, to the consumer not later than five days after the date on which the request for such disclosure was received from the consumer or such report was first requested, whichever is the later.

## ISSUE PRESENTED FOR REVIEW

1. Whether the District Court erred in concluding that WinCo did

   not willfully violate the FCRA's standalone requirement where

   its consumer report disclosure form was replete with

8

extraneous information—including statements regarding investigative reports and other superfluous details.

## STATEMENT OF THE CASE

In April 2015, Cross-Appellant/Appellee Gloria Mitchell ("Mitchell") applied for a job at one of Appellee/Cross-Appellant WinCo Foods, LLC's ("WinCo") supermarket stores in Lewisville, Texas. (ER44.) During her application and on-boarding process, Mitchell received a variety of disclosures and acknowledgements, including a supposed background check disclosure and authorization form. (*Id.*)

The first page, titled "Authorization for Background Check," acknowledged Mitchell's receipt of the disclosure document, as well as other background-related documents, consented to the preparation of background reports by a consumer reporting agency called TalentWise, and authorized a swath of agencies and individuals to disclose "any and all information" on Mitchell that may be requested by TalentWise. (ER38.) The second page, "Disclosure for Background Check," informed Mitchell that WinCo would procure a "consumer report and/or investigative consumer report" on her and provided a description of TalentWise and the potential contents of "[t]he report." (ER39.)

Although she was confused as to what she was authorizing, Mitchell signed the authorization form so that she could proceed and complete her application process. (ER44.) After completing her application, WinCo hired Mitchell to work as a deli clerk at its Lewisville, Texas location. (*Id.*) Mitchell worked as a deli clerk for several months. (*Id.*)

On February 18, 2016, Mitchell filed her initial complaint against WinCo in the United States District Court for the District of Idaho. (*See* ER56.) Mitchell alleged, and has maintained through amended pleadings, that WinCo willfully violated the Fair Credit Reporting Act ("FCRA") by providing a disclosure form that is unclear and otherwise fails to stand alone. (ER42, ER48.) Mitchell sought relief on behalf of herself as well as on behalf of an alleged class of individuals who were presented with and harmed by the same unlawful form. (ER44–45.)

After Mitchell filed an amended complaint, WinCo responded by moving to dismiss for failure to state a claim and for lack of standing. (*See* ER57, ER58.) On March 7, 2017, the District Court granted WinCo's motion on the basis of standing—a decision that ultimately came before the Ninth Circuit on appeal. (ER59.) Mitchell's appeal was

successful, and the Court remanded her case on November 29, 2018, so that she could amend her complaint. (*Id.*)

Mitchell filed her second amended complaint on January 25, 2019, and WinCo moved once again on February 21, 2019, to dismiss the complaint for failure to state a claim. (ER59.) The parties briefed the motion by April 18, 2019, and the District Court, Judge B. Lynn Winmill presiding, heard oral argument on the motion on April 24, 2019. (ER60.)

On May 9, 2019, the District Court issued its order granting in part and denying in part WinCo's motion to dismiss. (ER16.) The District Court found that, in light of the plain language of the FCRA's stand-alone disclosure requirement, as well as the Ninth Circuit's unambiguous decisions in *Syed* and *Gilberg*, Mitchell had alleged that WinCo violated the FCRA by including investigative report details in what should have been a document consisting "solely" of the consumer report disclosure. (ER22.) The District Court found this way despite confiding its personal belief that WinCo's form was "better than the system put in place by Congress." (ER24.)

Notwithstanding this determination, the District Court further concluded, as a matter of law, that WinCo's violation of the stand-alone

11

requirement was not willful. (ER28.) The District Court determined that a willful violation occurs when a defendant "recklessly fails to comply" with the FCRA, including by adopting an interpretation that is "objectively unreasonable." (ER25–26.) The District Court found that WinCo's combination of the disclosures with consumer reports with the disclosure for investigative consumer reports was not a willful violation of the Act, citing the absence of any analysis in *Gilberg* or *Syed* as "persuasive" and concluding that the FTC's *Willner* opinion "weighs heavily in WinCo's favor." (ER26–27.)

As a result, the District Court denied WinCo's motion with respect to Mitchell's FCRA stand-alone disclosure claim, granted the motion with respect to statutory damages, and ordered the parties to proceed with a case management order and litigation plan. (ER28–29.) Subsequently, because Mitchell's claim only sought statutory damages—which requires her to prove a willful violation of the FCRA— Mitchell moved on May 24, 2019, to certify the District Court's order for immediate interlocutory review. (ER14–15.) WinCo disagreed with the path forward to appeal, filing a competing motion for judgment on the pleadings with its response on June 13, 2019. (*See* ER60–61.)

On August 21, 2019, the District Court granted WinCo's motion and denied Mitchell's motion, noting in its order that the case was "effectively over" without a willful violation and the parties simply "disagree[d] on the procedural path forward" to an appeal. (ER10, ER11.) Likewise, the District Court entered final judgment in the matter on August 21, 2019, dismissing the case in its entirety based on both orders. (ER07.)

On September 18, 2019, Mitchell timely filed her notice of appeal from the District Court's final order of dismissal, based on its May 9, 2019 order of partial dismissal. (ER03.)

## SUMMARY OF THE ARGUMENT

I. The District Court erred in concluding that WinCo's violation of the FCRA was not committed willfully. WinCo's inclusion of investigative report details in its consumer report disclosure rendered the form unclear and violates the statute's stand-alone disclosure requirement. The language of the Act is unambiguous—the word "solely" means "solely," and WinCo's apparent interpretation of the provision to permit the combining of two different types of report disclosures is objectively unreasonable. Accordingly, under the *Safeco*

standard, WinCo acted recklessly, and therefore willfully, in violating the FCRA.

In support of its reasoning, the District Court put forth two imperfect analyses of the authorities before it. First, the District Court erroneously found that the FTC's *Willner* letter heavily favored WinCo. Even though the *Willner* opinion is owed no deference due to the unambiguous nature of the FCRA's stand-alone provision, the FTC in fact counseled *against* overshadowing a consumer report disclosure with investigative report details, as WinCo did here. Second, the District Court concluded that *Syed* and *Gilberg* somehow authorized employers to amalgamate two disclosures into one. This interpretation is unsupported because the issue was not presented to—let alone addressed by—the Ninth Circuit in either case.

The District Court's finding that WinCo did not willfully violate the FCRA was made in error, and its orders dismissing the claim and the case in its entirety should be reversed.

## ARGUMENT

## I.    THE DISTRICT COURT ERRED IN CONCLUDING THAT WINCO DID NOT WILLFULLY VIOLATE THE FCRA AS A MATTER OF LAW.

The District Court's conclusion that WinCo did not willfully

14

violate the FCRA was made in error, and the orders of dismissal resulting from that conclusion should be reversed. Admittedly, and to its credit, the District Court correctly found that WinCo violated the stand-alone disclosure requirement by clouding its consumer report disclosure with details regarding investigative reports and other extraneous information. Such is the case because of the unambiguous language in the statute, which is not open to interpretation. As a result, WinCo's actions were objectively unreasonable and rose to the level of willfulness under the *Safeco* standard—the District Court erred in finding otherwise.

The District Court engaged in two flawed lines of reasoning: (1) that the FTC's *Willner* letter strongly favored WinCo's form; and (2) that the Ninth Circuit's failure to address the propriety of combining consumer report disclosures with investigative consumer report disclosures—in two decisions where the issue was never raised— suggested that combining the disclosures was somehow reasonable. Neither conclusion was accurate. First, *Willner* is not entitled to deference, especially to the extent it conflicts with the FCRA, but even the FTC went out of its way to instruct employers to keep their disclosures separate. Likewise, reading *Syed* and *Gilberg* as implicitly

authorizing WinCo's form is unfounded—in neither case was the Court asked to consider the issue at hand.

In light of these errors, the District Court's orders finding no willfulness as a matter of law and dismissing the case were made in error and should be reversed.

### A.    Standard Of Review

A dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is reviewed *de novo*. *Wilson v. Lynch*, 835 F.3d 1083, 1090 (9th Cir. 2016), *cert. denied sub nom.* The scope of review is generally limited to the contents of the complaint. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998). Likewise, because a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion, the same *de novo* standard of review applies to both motions. *Gregg v. Hawaii, Dept. of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017). All factual allegations are taken as true and construed in the light most favorable to plaintiff as the nonmoving party. *Enesco Corp.*, 146 F.3d at 1085; *see also Gregg*, 870 F.3d at 886–87.

### B.    WinCo Violated The FCRA's Stand-Alone Disclosure Requirement By Combining Its Consumer Report Disclosure With The Disclosure Required For

## Investigative Consumer Reports.

The foundational issue underlying Mitchell's claim, which the District Court found she had sufficiently alleged, is that WinCo's disclosure fails to stand alone in a document that "consists solely of the disclosure." Section 1681b(b)(2)(A)(i) of the FCRA requires employers to provide a "clear and conspicuous disclosure" to their employees and prospective new hires of the employer's intent to procure a consumer credit report. 15 U.S.C. § 1681b(b)(2)(A)(i). The statute further mandates that the consumer report disclosure must be made to employees "in a document that consists solely of the disclosure." *Id.* (emphasis added). This provision is commonly known as the "stand-alone" disclosure requirement.

The Ninth Circuit has considered this provision and has repeatedly held that it means what it says. In *Syed*, the Court held that the word "solely" as it appears in the FCRA's disclosure requirement is not contradictory, nor is it merely surplusage—it means "solely." *Syed v. M-I, LLC*, 853 F.3d 492, 501 (9th Cir. 2017). "That other FCRA provisions mandating disclosure omit the term 'solely' is further evidence that Congress intended that term to carry meaning in 15 U.S.C. § 1681b(b)(2)(A)(i)." *Id.* The statute makes one exception for the

17

inclusion of an authorization with the disclosure, but judicial wisdom "counsels against finding additional, implied, exceptions" where an express exception is made. *Id.*

In January 2019, the Court revisited this issue in *Gilberg v. Cal. Check Cashing Stores, LLC* and squarely rejected a defendant's attempt to limit *Syed's* holding to the inclusion of liability waivers within FCRA disclosures. *See Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1175–76 (9th Cir. 2019). That is, the Court made clear that "*Syed*'s holding and statutory analysis were not limited to liability waivers; *Syed* considered the standalone requirement with regard to any surplusage." *Id.* at 1175. The Court based its holdings on the language of the FCRA itself, which does not change with the facts: "We concluded [in *Syed*] the statute meant what it said: the required disclosure must be in a document that 'consist[s] "solely" of the disclosure.'" *Id.* at 1175 (citing *Syed*, 853 F.3d at 496, 500). The stand-alone requirement "forecloses implied exceptions," even for related information—it can be a distraction and "as likely to confuse as it is to inform." *Id.* at 1176. Thus, even extraneous information that ostensibly furthers the purposes of the FCRA is flatly prohibited because "purpose does not override plain meaning." *Id.* at 1175.

18

Here, and as the District Court found, WinCo violated the stand-alone requirement by obscuring its consumer report disclosure with details about the nature and scope of investigative consumer reports. (*See* ER21–22.) Section 1681b and the stand-alone disclosure provision therein pertain exclusively to "consumer reports"—the FCRA contains a wholly separate section governing the disclosures required for investigative consumer reports. *Compare* 15 U.S.C. § 1681b *with* 15 U.S.C. § 1681d. The two report types are significantly different and distinctly defined: while "consumer reports" are credit and background checks provided by consumer reporting agencies, "investigative consumer reports" involve personal interviews with neighbors, friends, or associates, and they cannot include specific credit information obtained directly from creditors or consumers. 15 U.S.C. § 1681a(d)(1), 1681a(e).

Not only does each report pertain to a different type of information, each type of report has unique and distinct disclosure requirements. Indeed, whereas Section 1681b requires the consumer report disclosure to be provided to a consumer prior to the employer's procurement of a consumer report, Section 1681d requires an investigative consumer report disclosure to be "made in a writing

19

mailed, or otherwise delivered, to the consumer, not later than three days after the date on which the report was first requested." 15 U.S.C. § 1681d(a)(1). Subjects of investigative consumer reports may then request further additional information, including details about the nature and scope of the investigation, the types of questions asked, the types of persons interviewed, and the name and address of the investigating agency. 15 U.S.C. § 1681d(b); *see* FTC Staff Report, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT, at 64 (July 2011), www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf (last visited Dec. 11, 2019) [hereafter "40 YEARS OF THE FCRA"]. The Court in *Syed* acknowledged the FCRA's disparate disclosure requirements when exploring the appearance of the word "solely." *See Syed*, 853 F.3d at 501 (noting the appearance of the word "solely" in section 1681b, but not in the disclosure requirements of 1681d).

WinCo's disclosure form ignored the intent of the statute entirely and combined both disclosures. After noting that WinCo would procure "a consumer report and/or investigative consumer report," WinCo's singular disclosure form refers only to "the report," which would contain

information regarding character, general reputation, personal characteristics, mode of living, *and* credit standing. (ER39.) Credit standing information is unique to consumer reports, but WinCo's form suggests that information in "the report" "*will* be obtained" through interviews with coworkers, friends, neighbors, educational institutions, and even acquaintances. (*Id.*) Such interviews, of course, are the hallmarks of investigative reports, and WinCo's disclosure leaves open the possibility that interviews will be impermissibly used to gain information about credit standing. *See* 15 U.S.C. § 1681a(e). In short, not only does the FCRA expressly provide for two totally separate disclosures that are to be provided at two completely different times during the process (for consumer reports, before the report is obtained; for investigative consumer reports, no later than 3 days after the report is requested), the FCRA expressly divides the type of background information among the two report categories—distinctions WinCo's disclosure ignored in violation of Section 1681b(b)(2)(A)(i).

The District Court correctly found that Mitchell sufficiently alleged a violation of the FCRA. During oral argument, the District Court commented that "the *Gilberg* case, in particular, seems to make it quite clear that there really are no implied or explicit exceptions to the

21

standalone requirement" in Section 1681b(b)(2)(A)(i). (ER31.) However, the District Court revealed in its subsequent order dismissing the case that it held a negative view of the FCRA, opining in a footnote that WinCo's form may have been "a better method of disclosure than the method put in place by Congress." (ER24.)[2] This line of reasoning ignores the fact that providing notice after-the-fact for investigative consumer reports, which again involve personal interviews, may be necessary in certain instances to protect the integrity of the process. In any case, the point stands: by providing a wholly separate disclosure requirement for consumer reports and investigative consumer reports, and then expressly stating that the consumer report disclosure must consist solely of the disclosure, Congress could not have more clearly signaled its intention to prohibit combining these disclosures into a single document.

On the issue of a violation, the District Court ultimately followed the statute—or what it referred to as "the wisdom (or lack thereof) of Congress"—and agreed that "solely" means what it says. (ER21, 24.)

---

[2] This apparent disapproval of the logic underlying the FCRA may have informed the District Court's remaining analyses, as it actively searched for and eventually found a way to "get around" the FCRA as alluded to during oral argument. (*See* ER31, 32.)

The District Court agreed that the statute requires a consumer report disclosure to stand alone and that WinCo's form failed to do so. As such, and as found by the District Court, WinCo violated the FCRA. The question is one of willfulness.

###### C. WinCo's Violation Was Willful: The Plain Language Of The FCRA's Stand-Alone Disclosure Requirement Is Unambiguous And Thus Not Open To A Range Of Interpretations.

Though the District Court found that Mitchell had sufficiently alleged a violation of the FCRA, it went on to conclude, as a matter of law, that WinCo's violation was not willful—effectively insulating WinCo from liability for its failure to follow the statute by terminating Mitchell's claims for statutory damages. The District Court's conclusion on willfulness was made in error. Due to its unambiguous language, the FCRA's stand-alone disclosure requirement is not open to interpretation, especially one such as WinCo's that would permit the conglomeration of multiple disclosures into a single document. As a result, WinCo's actions were objectively unreasonable and constitute a willful violation under the Supreme Court's *Safeco* standard. The District Court's conclusion to the contrary should be reversed.

Section 1681n of the FCRA entitles consumers to statutory damages if an employer "willfully fails to comply" with any of the Act's requirements. 15 U.S.C. § 1681n(a). The Supreme Court held in *Safeco* that "reckless disregard" of a requirement of the FCRA would qualify as a willful violation for the purposes of statutory damages. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56–60 (2007). To qualify as a reckless violation under *Safeco*, the employer's actions must be an unreasonable reading of the statute and must create a substantially greater risk of violation than the risk associated with a careless reading. *Id.* at 69–70. The Supreme Court ruled that Safeco had not acted recklessly because its reading of the statutory provision in question[3] was not objectively unreasonable in light of the "less-than-pellucid" statutory language and a lack of guidance to inform or counsel against Safeco's interpretation. *Id.* at 70.

Unlike the provision at issue in *Safeco*, the FCRA's stand-alone disclosure requirement is pellucid and does not require interpretation to understand. The District Court agreed, finding the statute to be clear. (*See* ER21–22.) And as the Court explained in *Syed*, the language of

---

[3] *See* 15 U.S.C. § 1681a(k)(1)(B)(i) (referring to an "increase" in charges without defining any starting point for measuring the increase).

Section 1681b(b)(2)(A) is "unambiguous[]" in requiring a document that consists *solely* of the disclosure:

> Where congressional intent "has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S. Ct. 3245, 73 L.Ed.2d 973 (1982) (internal quotation marks omitted). And when "the meaning of the words seems to us to be intelligible upon a simple reading, ... we shall spend no time upon generalities concerning the principles of [statutory] interpretation." *United States v. M.H. Pulaski Co.*, 243 U.S. 97, 106, 37 S.Ct. 346, 61 L.Ed. 617 (1917).

> The ordinary meaning of "solely" is "[a]lone; singly" or "[e]ntirely; exclusively." *American Heritage Dictionary of the English Language* 1666 (5th ed. 2011).

*Syed*, 853 F.3d at 500. The provision is clear, and the explicit exception made for an authorization of the disclosure does not create any inconsistency or ambiguity. *Id.* at 500–01.

The Court continued in *Syed* to find that defendant M-I's violation was willful as a matter of law, due in no small part to the unambiguous nature of the stand-alone requirement. *Id.* at 503–06. The Court rejected M-I's argument that Section 1681b(b)(2)(A)(i) was "less than pellucid" and held that the FCRA "unambiguously bars a prospective employer from including a liability waiver" in a consumer report disclosure document." *Id.* at 503. The Court also noted that a lack of

25

judicial guidance "does not, as a matter of law, immunize [a party] from potential liability" for willful violation, especially where the provision at issue is unambiguous. *See Syed*, 853 F.3d at 504 (citing *Cortez v. Trans Union, LLC*, 617 F.3d 688, 721 (3d Cir. 2010)) (alterations in original). M-I's actions "comport[ed] with no reasonable interpretation" of the stand-alone disclosure requirement, and thus its interpretation was objectively unreasonable. *Id.*

The Court moved then to the question of risk created by M-I's interpretation. Though the Court admitted "it is possible to imagine an interpretation of [1681b(b)(2)(A)(i)] that would be objectively unreasonable without rising to the level of recklessness," such as using six-point font for a disclosure, the term "solely" is "not subject to a range of plausible interpretations." *Id.* at 505. Thus, the Court had no need to consider M-I's subjective interpretation to find recklessness because the statute "unambiguously bars" inclusion of, in the case of M-I's form, a liability waiver. *Id.* By interpreting "solely" to allow for a liability waiver, M-I ran an unjustifiably high risk of violating the statute—conduct that amounted to reckless disregard of a statutory duty. *See id.* at 506. Because these holdings were rooted in analysis of the word "solely," the Ninth Circuit would later confirm that *Syed*'s applicability

26

was not limited to liability waivers, but applied with equal force "to *any* surplusage." *Gilberg*, 913 F.3d at 1175.

Here, rather than adding a liability waiver to its disclosure form, WinCo added disclosure details regarding the nature and scope of any investigative consumer report it may choose to obtain, which, again, is a different sub-type of report with its own disclosure requirements. *See* 15 U.S.C. § 1681a(e), 1681d. Instead of consisting "solely" of a consumer report disclosure, WinCo's form: (1) discloses that an investigative report will be obtained without distinguishing it from the consumer report; (2) provides detailed information about TalentWise; (3) states that information "will be obtained…through interviews"; and (4) lists a multitude of sources that will be interviewed (friends, neighbors, acquaintances, etc.). (ER39.) All of these pieces of information are necessary components of *investigative* consumer report disclosures, to be provided *after* such a report is obtained. *See* 1681d(a)–(b); 40 YEARS OF THE FCRA, at 64.

Like the form used in *Syed*, WinCo's disclosure comports with no reasonable interpretation of Section 1681b(b)(2)(A)(i). The word "solely" means "solely." It does not mean "mixed with details required for investigative consumer report disclosures." WinCo did not merely

27

engage in a careless reading of the statute—it injected elements of the disclosures required by 1681d into its disclosure required by 1681b(b)(2), even though the FCRA clearly states that the form for 1681b(b)(2) must consist "solely" of the consumer report disclosure. This interpretation created an unjustifiably high risk of violating the statute, and thus WinCo's conduct amounts to recklessness, and a willful violation of the FCRA, under the *Safeco* standard.

Nevertheless, the District Court erroneously concluded that WinCo's violation was not willful as a matter of law. (*See* ER28.) The District Court defended WinCo's position, stating that "[s]tatutory interpretation is a difficult business" and that WinCo could "at most" be considered negligent for failing to give appropriate weight to the word "solely." (*Id.*) But the word "solely" is unambiguous and does not require interpretation. To read the stand-alone requirement with "the clarity that the Ninth Circuit has said we need to adopt" requires only an understanding of the plain meaning of the word "solely," as well as a willingness to comply with the law. (*See* ER33.) Any employer who interprets "solely" to mean "with other information" is acting recklessly—not just negligently—and substantially increasing the risk of an FCRA violation.

28

Further, the District Court suggested that WinCo's violation should be excused as negligent because there was no court decision explicitly informing employers that this sort of combination is unlawful. (ER26, 35.) But a lack of judicial guidance does not immunize parties from liability for statutory damages. *See Syed*, 853 F.3d at 504. Indeed, the employer "whose conduct is first examined under [a] section of the Act should not receive a pass because the issue has never been decided." *Id.* at 506 (citing *Cortez*, 617 F.3d at 722) (alterations in original). If that were the case, then neither of the employers in *Syed* or *Gilberg* would have been liable. *See id.* at 505–06; *Gilberg*, 913 F.3d at 1175. Under such an approach, so long as employers could find novel categories of information to inject into their consumer report disclosures, the courts would be unable to assign liability—defendants would be rewarded for finding new ways to violate the same statute.

Despite WinCo's interpretation, the FCRA's stand-alone requirement remains unambiguous, and the meaning of the word "solely" has not changed since the law was drafted. WinCo's decision to suffuse its consumer report disclosure with details that may only be included in an investigative report disclosure evinces a reckless disregard of the statutory mandate, creating an unjustifiably high risk

of violating the FCRA. Accordingly, WinCo's violation was willful under the *Safeco* standard, and the District Court's conclusion to the contrary should be reversed.

### D. To The Extent That The FTC's Interpretations Of The Stand-Alone Disclosure Requirement May Be Persuasive, The *Willner* Opinion Explicitly Counseled Against Combining The Disclosures.

In determining that WinCo did not willfully violate the FCRA, the District Court relied in no small part on the FTC's *Willner* advisory letter, which supposedly "weigh[ed] heavily in WinCo's favor" regarding the inclusion of investigative report details in a consumer report disclosure. (ER27.) The District Court's reliance on *Willner* is flawed for at least two reasons. First, FTC staff opinion letters do not constitute authoritative guidance, and they are not entitled to deference where, as in *Willner*, they interpret (and conflict with) an unambiguous statutory provision. Second, even if the Court were to find *Willner* persuasive, any support for WinCo's form is undercut by the explicit instruction to keep the disclosures separate as a best practice for compliance. In short, *Willner* does not support or excuse WinCo's decision to blend disclosure information and enhance its risk of violating the FCRA.

In 1999, a staff member of the FTC issued the *Willner* advisory

30

letter, opining on what investigative report information, if any, could be

included in a stand-alone consumer report disclosure:

> Section 604(b)(2)(A)'s requirement that the disclosure by employers of any consumer report (investigative or other) be in a stand-alone document raises the issue of what (if any) other items may be included on that document.... [T]he intent of this provision is to insure [sic] that the disclosure appears conspicuously in a document **unencumbered by other information**.... [W]e opined that the employer could also include the authorization required by Section 604(b)(2)(B), because the authorization would contain **limited** verbiage and would enhance the Section 604(b)(2)(A) disclosure, rather than detract from it. We believe that a **limited** Section 606(a) disclosure [informing employees that an investigative report may be requested] would also be permissible, on the same theory.... However, a Section 606(b) notice setting forth the nature and scope of the investigation would of necessity be much more detailed and would likely be held to **overshadow** 604(b) disclosure in violation of 604(b)(2)(A). Therefore, we believe that an employer may combine **only a very limited** Section 606(a) notice with the general Section 604(b)(2)(A) notice without running afoul of the latter section's requirement that the required disclosure be in a stand-alone document. **The surest way for an employer to comply, of course, would be to provide the Section 604(b)(2)(A) notice and the Section 606 notice in separate documents.**

*FTC Advisory Opinion to Willner*, 1999 WL 33932153, at *2 (Mar. 25,

1999) (emphasis added) [hereafter *Willner*]. The FTC staff member's

interpretation set forth in *Willner* seemingly expands the stand-alone

requirement to permit, at most, the inclusion of a "very limited" notice

of the intent to procure an investigative report. *Id.* And to be sure,

*Willner* shouldn't be followed at all—*any* extra information is prohibited, even information that supposedly "enhances" the disclosure.[4] Yet even if the Court were to pay it deference, *Willner* doesn't actually help WinCo: *Willner* specifically excludes notice of the nature and scope of the investigation, as these details would likely overshadow the consumer report disclosure, and Willner ultimately counsels against adding any surplusage at all. *Id.*

Though the *Willner* letter may have provided the District Court with a way to "get around" the plain language of the FCRA, the FTC's staff opinion is not owed any weight or deference. (*See* ER31, 32.) As explained above, the Court has previously held that the FCRA's stand-alone disclosure requirement is unambiguous. *See Syed*, 853 F.3d at 500. The Supreme Court's long-standing doctrine of *Chevron* deference informs that an unambiguous statute is not subject to agency interpretation:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions.

---

[4] Again, as *Syed* recognized, the stand-alone requirement "forecloses implied exceptions," even for related information—it can be a distraction and "as likely to confuse as it is to inform." *Id.* at 1176. Indeed, one can imagine pages of related information that may arguably "enhance" a disclosure—the statute makes no exception for "enhancing information," and this Court should decline the invitation to draft one.

> First, always, is the question of whether Congress had directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). The position outlined in *Willner* reads the FCRA's disclosure requirement to allow inclusion of an investigative report notice in what should be a stand-alone consumer report disclosure—this standard contravenes the mandate of the statute, ignores that the disclosures are to be provided at two wholly different points in the application process, and defies the plain meaning of the word "solely." *See Willner*, 1999 WL 33932153, at *2. Thus, the *Willner* staff opinion letter is inconsistent with a clear statutory mandate, and, as such, it is owed no deference.

Relatedly, agency staff opinions cannot be given the weight of an official regulatory construction due to their informal nature. *See e.g. Syed*, 853 F.3d at 504, n. 6 ("[I]nformal opinion letters do not constitute authoritative guidance."); *see also Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1230 (9th Cir. 1988) (explaining that "advisory opinions do not carry the weight of congressionally authorized agency regulations"). Staff letters such as *Willner* "express the FTC's then-existing enforcement position," which can change without warning

33

and without formal procedure. *See Swanson*, 869 F.2d at 1230. For example, less than two years before the *Willner* letter was written, the FTC stated that a consumer report disclosure document "should include nothing more than the disclosure and the authorization for obtaining a consumer report." *FTC Advisory Opinion to Steer*, 1997 WL 33791227, at *1 (Oct. 21, 1997). Indeed, the final lines of each of these letters confirm that they do not even bind the FTC. *See Willner*, 1999 WL 33932153, at *3; *Advisory Opinion to Steer*, 1997 WL 33791227, at *1. Thus, *Willner* should not be given the weight of persuasive legal authority, especially to the extent that it contradicts the FCRA.

The language of the FCRA's stand-alone disclosure requirement is unambiguous, and the Court previously held that implied exceptions should not be read into the statute. *See Syed*, 853 F.3d at 501. Nevertheless, even if the Court were to change course and give weight to *Willner*, the FTC's letter counsels against the extent and kind of inclusions made by WinCo. The FTC opined that employers could combine "only a very limited" investigative report notice because nature and scope details, as required by Section 1681d(b), would "overshadow" what must be a stand-alone disclosure. *Willner*, 1999 WL 33932153, at *2. As an example, the FTC provided two sentences to notify applicants

that: (1) an investigative report may be obtained; and (2) the applicant has the right to request disclosure of the nature and scope of any such report. *Id.* Even after giving this example, the advisory opinion cautions employers that "the surest way" to comply is to present separate disclosure documents. *Id.* If adopted notwithstanding its contravention of the FCRA's plain language, *Willner* specifies the *maximum* allowable inclusions—it is a ceiling, not a floor. Any additional information violates the stand-alone disclosure requirement of Section 1681b(b)(2)(A)(i).

Here, WinCo rejected the surest way to comply and included far more information than the "very limited" notice allowed by *Willner*. As explained above, WinCo's form discloses that an investigative report may be obtained, but thereafter fails to distinguish it from a consumer report, blending additional details into a 1681b(b)(2)(A)(i) disclosure that is supposed to stand alone. (ER39.) The form provides detailed information about TalentWise, states that "the report" will contain information obtained through interviews, and lists a variety of personnel that will be interviewed. (*Id.*) Such information belongs in a separate disclosure for investigative consumer reports: in this form, it serves to overshadow the would-be consumer report disclosure. *See* 40

YEARS OF THE FCRA, at 64. Beyond the limited notice outlined in *Willner*, WinCo's form expands on the nature and scope of its investigative reports and fails to differentiate between the two report types, confusing potential employees like Mitchell about what is being disclosed and what exactly is being authorized. Even if viewed under *Willner*'s more lenient standard, WinCo created a greater risk of violating the statute by exceeding the bounds of permissible inclusion and packing its disclosure with extraneous information.

Accordingly, the District Court erred in relying on the FTC's *Willner* letter as supportive of WinCo's use of its unlawful form. As a threshold consideration, the FTC's staff letter conflicts with the plain language of the FCRA and it is not entitled to deference. Even if it is deemed persuasive, however, the *Willner* opinion explicitly warns employers not to "overshadow" the disclosure with nature and scope details of investigative reports, and it otherwise instructs employers to avoid the risk of violation by providing separate forms. WinCo did just that—obscuring its form with extraneous details, increasing the risk of an unlawful disclosure, and willfully violating the FCRA's stand-alone disclosure requirement. The District Court erred in finding otherwise, and its determinations should be reversed.

E. **The Lower Court's Conclusion That The Combination Of Information In WinCo's Disclosure Form Was Authorized By *Syed* And *Gilberg*, Either Directly Or By Implication, Was Also Made In Error.**

The District Court also erred in concluding that WinCo's placement of investigative report details in its consumer report disclosure was somehow excused by the holdings of *Gilberg* and *Syed*. In determining that WinCo did not willfully violate the FCRA, the District Court leaned on the fact that, while no court had previously found this combination to be unlawful, "the disclosures in *Syed* and *Gilberg* both combined the consumer report disclosure and investigative report disclosure." (ER26.) Thus, according to the District Court, because these opinions did not specifically hold that such combination was unlawful, the Ninth Circuit "directly or by implication" concluded that combining the two disclosures was permissible, which would excuse an employer's violation as not willful. (ER26–27, n.6.) This reasoning is flawed, and the District Court's misplaced reliance on *Syed* and *Gilberg* as persuasive authorities on issues they did not address cannot withstand scrutiny.

As early as oral arguments, the District Court alluded to "two Ninth Circuit district court decisions" that supported including

investigative report details in the stand-alone consumer report
disclosure. (ER33.) The decisions referred to by the District Court were
*Walker v. Fred Meyer, Inc.*, No. 3:17-CV-01791-YY, 2018 WL 3090199
(D. Or. June 21, 2018)[5], and *Coleman v. Kohl's Dep't Stores, Inc.*, No. 15-
cv-02588-JCS, 2015 WL 5782352 (N.D. Cal. Oct. 5, 2015). (*See* ER21.)
The District Court cited to these cases as incorrectly finding that
investigative details do not violate the stand-alone requirement, which
would supposedly absolve employers from willful violation. (*See* ER33.)
But only one of these cases actually considered the issue. In *Coleman*,
the court only considered the plaintiff's theory "that the Employment
Application and Consent and Disclosure Form [were], in actuality, one
document as 'part of the same employment packet.'" *Coleman*, 2015 WL
5782352, at \*5–6. The *Coleman* court's finding that the form satisfied
the stand-alone requirement was based on titles, paper orientation, and
the presence of signatures—not on the information included in the
disclosures. *Id.* at \*5.

Thus, the District Court's understanding of a trend—that "every
decision that has squarely addressed the issue" favors combining

---

[5] This case is currently before the Court on appeal and has been noted
in the Statement of Related Cases. *See infra.*

investigative details with the consumer report disclosure—is really based on just one case: *Walker*. (*See* ER36.) The *Walker* court, which has been appealed and submitted to this Court, did address the issue, finding that particular investigative report details in a consumer report disclosure were permissible because they didn't "overshadow" the stand-alone report, borrowing language from the *Willner* letter. *See Walker*, 2018 WL 3090199, at \*2.

The District Court here disagreed because including those details is "not consistent with the statutory language." (*See* ER22, n.1.) Further, the fact that the District of Oregon found this way does not mean that an employer is incapable of willfully violating the FCRA by including investigative report details. The decision in *Walker* was based on the FTC's *Willner* opinion, which, as discussed above, notes the risk of violation and "overshadow[ing]" that can occur from including too many investigative report details. *See Willner*, 1999 WL 33932153, at \*2. Though it contradicts the statute itself, *Willner* still falls back on informing employers to keep their forms separate. *See id*. *Walker* does not justify dismissing WinCo's violation as careless; rather, the risk of violation has been apparent even from the FTC's lenient *Willner* standard for more than 20 years.

39

At the appellate level, the Ninth Circuit's holdings in *Syed* and *Gilberg* were based on two different challenges to information included in consumer report disclosures. In *Syed*, the Court concluded that a liability waiver was extraneous information and therefore violated the FCRA's stand-alone disclosure requirement. *See Syed*, 853 F.3d at 498. Two years later, the Court ruled in *Gilberg* that the same logic applied to state law information—it was also extraneous to the consumer report disclosure required by the FCRA, and its inclusion violated the law. *Gilberg*, 913 F.3d at 1171.

Both holdings were the result of a challenge to the inclusion of particular information, which the Ninth Circuit agreed was unlawful. As a result, the Court did not, nor was there any need to, further comb through the employer disclosures for additional, potentially violative information. One extraneous inclusion is enough to violate the provision requiring a form that "consists solely" of the consumer report disclosure. 15 U.S.C. § 1681b(b)(2)(A)(i). Thus, both forms were held to be unlawful because the information complained of in each was extraneous.

However, the District Court saw things differently—seemingly reasoning that the whole of the forms in *Syed* and *Gilberg* were approved and deemed lawful, save for the one particular unlawful

40

inclusion. As an example of this flawed logic, the District Court interpreted *Gilberg* as endorsing the combination of investigative and consumer report details: even though the Ninth Circuit held the form in that case to be "ambiguous and fatally unclear for other reasons, they did not take issue with any lack of clarity created by the combining of the two disclosures." (ER24, n.4.) It stands to reason that the Court would not "take issue" with the remaining portions of the form—not because what remains is clear, but because what remains is irrelevant. This point is made explicitly in *Syed*:

> Whether the disclosure is "clear and conspicuous" is irrelevant to the analysis. . . . Because the question of whether a disclosure is "clear and conspicuous" within the meaning of Section 1681b(b)(2)(A)(i) is separate from the question of whether a document consists "solely" of a disclosure, *and is not one that is before us here*, we decide only that including the waiver violated the statute's "solely" requirement.

*Syed*, 853 F.3d at 502–03 (emphasis added). The Court held, on the issue being argued before it, that the form in question was unlawful. It did **not** hold, by implication or otherwise, that the remainder of the form was lawful, on questions and theories not brought before the Court.

Thus, the District Court's reliance on *Gilberg* and *Syed* as supportive of WinCo's combined form, either "directly or by implication"

41

was in error. (*See* ER27, n.6.) Only one district court has "squarely addressed" the combination of investigative details in a consumer report, and that decision is currently awaiting appellate review from the Court. The pendency and novelty of these issues do not counteract the clarity of the FCRA, which unambiguously requires a stand-alone disclosure. Accordingly, WinCo created an unreasonable risk of violating the statute by testing a new form of extraneous information, and its actions can be considered a willful violation of the Act.

## CONCLUSION

The District Court erred in concluding that WinCo did not willfully violate the FCRA. Rather than stand alone, WinCo's consumer report disclosure combines with details for an investigative report disclosure. Its choice to do so in light of the unambiguous language of the FCRA constitutes an objectively unreasonable interpretation that creates a greater risk of violation—a willful violation under the *Safeco* standard. The District Court erroneously attempted to justify WinCo's violation through an FTC letter that is owed no deference and a flawed interpretation of case law that never addressed the issue at hand.

As such, the District Court's dismissals of Mitchell's claim for statutory damages and the case in its entirety should be reversed, and

42

the case should be remanded to the District Court to proceed past the pleadings.

Dated: January 29, 2020        Respectfully submitted,

By: /s/ Patrick H. Peluso
Attorneys for Cross-Appellant/Appellee

# STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Cross-Appellant/Appellee Gloria Mitchell herein identifies all "known related case[s] pending in this court." Mitchell states that the case of *Daniel Walker v. Fred Meyer, Inc.*, No. 18-35592, currently pending before the Ninth Circuit, is a related case as defined by Rule 28-2.6. The present appeal is related to *Walker v. Fred Meyer* because the appeals raise closely related issues regarding liability under the FCRA for including investigative consumer report details in a consumer report disclosure. Mitchell further states that, following diligent inquiry, she does not know of any other related appeals or cases pending in this Court.

Dated: January 27, 2020    By: */s/ Patrick H. Peluso*

Patrick H. Peluso
Steven L. Woodrow
Woodrow & Peluso, LLC

*Attorneys for Cross-Appellant/Appellee Gloria Mitchell*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. 32(a)(7)(C), I certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,639 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), as well as the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook font.

Dated: January 27, 2020          By: */s/ Patrick H. Peluso*

Patrick H. Peluso
Steven L. Woodrow
Woodrow & Peluso, LLC

*Attorneys for Cross-Appellant/Appellee Gloria Mitchell*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: January 27, 2020        By: */s/ Patrick H. Peluso*

Patrick H. Peluso
Steven L. Woodrow
Woodrow & Peluso, LLC

*Attorneys for Cross-Appellant/Appellee Gloria Mitchell*